**EXHIBIT 1**

| | |
|---|---|
| **DISTRICT COURT, TELLER COUNTY, COLORADO**<br><br>**Teller County District Court**<br>**101 W. Bennett Avenue**<br>**P.O. Box 997**<br>**Cripple Creek, CO 80813** | DATE FILED: June 12, 2020 10:16 AM<br>FILING ID: DFAE829ECBAA5<br>CASE NUMBER: 2020CV30030<br><br>▲ COURT USE ONLY ▲ |
| **Plaintiff:** Matthew Ritter<br><br>v.<br><br>**Defendant:** Metropolitan Life Insurance Company | **Case Number:**<br><br>**Div.:**<br>**Room:** |
| Bradford Pelton, Atty. No. 8597<br>Alex D Kerr, Atty. No. 54197<br>**Bradford Pelton, Attorney at Law**<br>320 S. Cascade Avenue<br>Colorado Springs, Colorado 80903<br>Phone Number: 719-634-8828<br>Fax Number: 719-634-8535<br>bradford@bradfordpeltonlaw.com<br>alexkerr@bradfordpeltonlaw.com | |
| **PLAINTIFF'S COMPLAINT** ||

Matthew Ritter "Plaintiff," by and through counsel of record, Bradford Pelton, P.C., files this Complaint against Metropolitan Life Insurance Company ("MetLife") and in support thereof states and alleges as follows:

1. This is an insurance contract case arising from Defendant, MetLife's, improper denial of payment for accidental death and dismemberment ("AD&D") benefits under the issued term life & accidental death and dismemberment insurance policy.

2. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et. seq*.

## I. PARTIES, JURISDICTION, AND VENUE

3. The Plaintiff, Matthew Ritter, at all times relevant to this Complaint was and continues to be a resident at 117 Aspen Village Road, Divide, CO 80814.

4. The Defendant, MetLife, at all times relevant to this Complaint, upon information and belief, was and continues to be an insurance company registered with the Colorado

Division of Insurance to conduct the business of insurance in the State of Colorado.

5. MetLife is a life insurance company doing business in the State of Colorado.

6. This Court has personal jurisdiction over MetLife.

7. The Court has subject matter jurisdiction over the action under 29 U.S.C. § 1132(e)(1) to wit: "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section."

8. Venue is proper in this Court pursuant to C.R.C.P. 98(c) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this judicial district.

## II. FACTS

**The Term Life & Accidental Death and Dismemberment Policy**

9. The Term Life & Accidental Death and Dismemberment is a group policy contracted between MetLife and the policyholder, Newmont USA Limited, herein after referred to as "the Plan."

10. The AD&D policy was issued in Colorado.

11. Mr. Ritter, at all times relevant, was an employee of Newmont USA Limited, a subsidiary of Newmont Mining Corporation.

12. As a result of being an employee with Newmont USA Limited, Mr. Ritter was insured as a beneficiary under the insurance policy contracted between his employer and MetLife.

13. Aimee C. Brasche was the domestic partner of Mr. Ritter the entire time he was an employee at Newmont USA Limited until the date of her death, July 4, 2018.

14. Ms. Brasche was enrolled as Mr. Ritter's dependent under the aforementioned insurance policy contract.

15. Under the Schedule for Benefits in the Plan, Mr. Ritter, as the main beneficiary, was eligible for a maximum basic accidental death and dismemberment full amount of $500,000.00.

16. Under the Schedule for Benefits in the Plan, as the named dependent and spouse of the insured beneficiary, Ms. Brasche was insured and eligible for "an amount equal to 50% of [beneficiary's] voluntary accidental death and dismemberment insurance," an amount which is $250,000.00.

17. Under the Schedule of Covered Losses for Voluntary Accidental Death and Dismemberment Insurance (Schedule of Benefits), loss of life of a spouse is covered at 100% of the eligible amount the spouse is insured for.

18. The Plan defines "spouse" as "your lawful spouse," and then states that "[w]herever the term 'Spouse' appears in the certificate it shall, unless otherwise specified, be read to include Your Domestic Partner."

19. "Accidental," "accident," or any other iteration of the word are not defined in the Plan.

20. The Plan states that "[i]f you or a Dependent sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof We will review the claim and, if We approve it, will pay the insurance in effect on the date of the injury."

21. "Direct and Sole Cause" is defined in the Plan as meaning "that the Covered Loss occurs within 365 days of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes."

22. Under Exclusions from coverage section of the Plan, the Plan states that:

    We will not pay benefits under this section for any loss cause or contributed by:

    1. physical or mental illness or infirmity, or the other diagnosis or treatment of such illness or infirmity.

23. MetLife reserves 90 days under the Plan language in order to decide to admit or deny a claim once an initial claim for benefits under the Plan is submitted to the administrator, MetLife. Additional time may be necessary and will be notified if needed if there are special circumstances present.

24. A claim denial will be accompanied with "the reason why [the] claim was denied and reference the specific Plan provision(s) on which the denial is based."

25. The denial of the initial determination by MetLife can be appealed by writing a letter requesting a review of the claim by MetLife.

26. The request for review should be sent within 60 days of receiving the notice of denial of the claim. MetLife then has 60 days to review the initial claim and initial determination and provide a notification of the review decision.

27. Legal action against MetLife on a claim for benefits may only be made 60 days after proof is filed and ends three years after proof is filed.

28. "Proof" is defined in the Plan as "Written evidence satisfactory to Us that a person has

satisfied the conditions and requirements for any benefit described in this certificate."

**The Death of Insured/Decedent – Aimee C. Brasche**

29. On the morning of July 3, 2018, Mr. Ritter arrived home from work and laid down to go to sleep.

30. As he was falling asleep, he heard a thud from the bathroom and went into the bathroom to see the decedent, Ms. Brasche, "on the floor with a blank stare in her eyes."

31. Mr. Ritter was going to call the emergency services as a result of the fall, but Ms. Brasche "came to" and asked him not to call as she got back into the bed stating that she was "ok."

32. Approximately an hour after the first fall in the bathroom, Mr. Ritter again was woken up by the sound of another similar thud in the bathroom again. When he entered the bathroom the second time, he observed Ms. Brasche "on the ground folded up in a weird position."

33. Ms. Brasche once again woke up and got back into the bed, while subsequently Mr. Ritter was calling the emergency services to the house.

34. Emergency responders came to the house and took Ms. Brasche to Penrose Hospital at 2222 N. Nevada Avenue, Colorado Springs, CO 80907.

35. Ms. Brasche was admitted to the hospital with upper GI bleeding and alcohol dependence syndrome. The upper GI bleeding was the result of a gastrointestinal hemorrhage and was present upon admission to the hospital.

36. Under the history of present illness at her intake, it was stated that "[r]ecently over the past to [sic] 3 days patient has had increasing falls at home." It was also noted by the intake nurse that patient was "not able to give a good historian [sic]."

37. In a CT of her chest, abdomen, and pelvis with contrast there were findings of "2 levels of cortical offset at the sternum."

38. Kelley Rae Lockhart, MD opined that the reason the patient was critically ill was a result of "[a]nemia due to erosive gastritis and acute blood loss." There was no opinion as to what caused the sudden blood loss or triggered the rupture of the gastroesophageal ulcer that was found and subsequently treated.

39. Patient was pronounced dead on July 4, 2018 at 11:33 p.m. due to an "unexpected death."

40. On Ms. Brasche's death certificate, prepared by Deputy Coroner, Sandra Way, the chain of events that directly caused Ms. Brasche's death were: acute respiratory distress, acute liver failure with hepatic coma, upper gastrointestinal bleeding, and acute blood loss

    anemia.

41. On the death certificate, significant conditions that contributed to Ms. Brasche's death, but were not resulting in the underlying cause or chain of events that directly caused her death were: septic shock, acute kidney failure, alcoholic dependence syndrome, pancolitis, and cirrhosis of liver.

**Administrative and Procedural History of the Claim for AD&D Benefits**

42. On August 28, 2019, Mr. Ritter made an initial claim for AD&D benefits as a result of the death of Ms. Brasche.

43. On September 9, 2019, MetLife issued notice of denial of the claim made on August 28, 2019, based upon their decision that the death of Ms. Brasche was not accidental per the Plan.

44. On October 31, 2019, Mr. Ritter wrote a letter to MetLife requesting a review of their denial of AD&D benefits for the death of Ms. Brasche on September 9, 2019.

45. On January 7, 2020, MetLife sent a letter requesting that Mr. Ritter complete a domestic partner declaration to clear up an irregularity between Ms. Brasche's medical records and death certificate; one which listed her as single and the other as married.

46. On March 5, 2020, Mr. Ritter sent the properly filled out domestic partner declaration along with bank statements containing both Ms. Brasche and Mr. Ritter's name as joint owners and the certificate of death of decedent listing her as married to MetLife in compliance with their January 7, 2020 request.

47. On March 9, 2020, MetLife sent their second determination letter again denying AD&D benefits to Mr. Ritter because they did not see evidence in Ms. Brasche's medical records that there was "an accidental injury that was the direct and sole cause of the death."

**MetLife's Denial of AD&D Benefits is Entitled No Deference**

48. The AD&D policy was effective as of January 1, 2008.

49. The AD&D policy was issued in Colorado.

50. Under Colorado law, "[a]n insurance policy, insurance contract, or plan that is issued in this state that offers health or disability benefits shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator to interpret the terms of the policy, contract, or plan or to determine eligibility for benefits." C.R.S. § 10-3-1116(2).

51. Under Colorado law, "[a]n insurance policy, insurance contract, or plan that issued in this state shall provide that a person who claims health, life, or disability benefits, whose

5

claim has been denied in whole or in part, and who has exhausted his or her administrative remedies shall be entitled to have his or her claim reviewed de novo in any court with jurisdiction and to a trial by jury." C.R.S. § 10-3-1116(3); *See also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)*.

52. C.R.S. § 10-3-1116 is a law regulation insurance and no call for a jury trial is being made, thus is not preempted by ERISA.

53. Under C.R.S. § 10-3-1116(3), MetLife's decision to deny AD&D benefits to Mr. Ritter should be reviewed by this Court under a de novo standard with no deference given to MetLife's decision.

### III. FIRST CLAIM FOR RELIEF
**Claim for AD&D Benefits Due Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

54. Plaintiff incorporates the above paragraphs herein, by reference.

55. Mr. Ritter brings this action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which provides a right to file a civil action to recover the AD&D benefits due to him under the Plan.

56. The Plan is a contract of insurance.

57. Mr. Ritter has made a proper claim for AD&D benefits under the Plan.

58. This suit is brought within the given statute of limitation under the Plan.

59. The evidence presented to MetLife shows that Ms. Brasche's death was predominantly caused by an accident.

60. The evidence presented to MetLife shows that as a result of Ms. Brasche's death and the terms of the Plan, Mr. Ritter is entitled to the AD&D benefits under the Plan.

61. Mr. Ritter has satisfied all conditions precedent to receiving AD&D benefits under the Plan.

62. Mr. Ritter has exhausted his administrative remedies provided under/in the Plan.

63. By the acts and omissions described herein, MetLife breached the terms of the Plan.

64. As a direct and proximate result of MetLife's breach of the Plan, Mr. Ritter has been denied AD&D benefits due to him since July 4, 2018.

65. Mr. Ritter brings this action to recover AD&D benefits owed to him under the Plan.

66. Under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Mr. Ritter is entitled to an award of

his reasonable attorney's fees and costs incurred by bringing this action.

WHEREFORE, Plaintiff, Matthew Ritter, requests judgment be entered against Defendant, MetLife, and award the following relief:

a. Declare that Ms. Brasche's death was predominantly caused by an accident within the meaning under Colorado law and is thus Mr. Ritter is entitled to AD&D benefits under the Plan;

b. Order MetLife to pay Mr. Ritter his entitled AD&D benefits under the Plan; and

c. Order MetLife to pay Mr. Ritter the costs of the suit herein, including reasonable attorney's fees and costs, under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

**DATED** this 12th day of June, 2020.

Respectfully Submitted,

/s/ Alex D. Kerr
Alex D. Kerr, Atty. No. 54197

/s/ Bradford Pelton
Bradford Pelton, Atty. No. 8597
320 S. Cascade Avenue
Colorado Springs, CO 80903
Phone 719-634-8848
Fax 719-634-8535

Plaintiff's address is:
117 Aspen Village Road
Divide, CO 80814-8100